Greene County, Appellant, *v.* Center Township.

82

Argued March 23, 1931. Before FRAZER, C. J., WALL-ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*James J. Purman,* with him *Ambrose Bradley* and *A. A. Purman,* for appellant.—Where plaintiff's statement presents the substance of a cause of action, he cannot be turned out of court because of amendable defects or because of generality of statement. Every doubt must be resolved against summary judgment: Vierling v. Baxter, 293 Pa. 52; Seaman v. Bank, 280 Pa. 124; Franklin Sugar Refining Co. v. Mercantile Co., 274 Pa. 206; Duggan v. Duggan, 291 Pa. 556; Davis v. Land Co., 296 Pa. 449.

*O. R. Hughes,* for appellee.—Plaintiff's statement shows no contract upon which it is entitled to recover: Northwestern C. Milling Co. v. Campbell & Campbell, 78 Pa. Superior Ct. 96; Peterson Co. v. Lumber Co., 70 Pitts. Leg. Jour. 609; Johnston v. Fessler, 7 Watts 48; Grant v. Levan, 4 Pa. 493; Bebber v. Beck, 6 Pa. 198; East Pa. R. R. Co. v. Scholenberger, 54 Pa. 144; Zoe-

bisch v. Rouch, 133 Pa. 532; Smith v. Loag, 132 Pa. 301; Lubricating Co. v. Wilhelm, 255 Pa. 390; Rissmiller v. Lutheran Congregation, 268 Pa. 41; Farren v. McNulty, 277 Pa. 279; Rasche & Co. v. Campbell, 276 Pa. 268; New Prague Flouring Co. v. Heen, 83 Pa. Superior Ct. 92; Kennedy-Stroh Corp. v. Davis, 72 Pa. Superior Ct. 381.

Township supervisors cannot bind their successors to improve, or to pay for improvement of, certain roads in the township: Moore v. Luzerne Co., 262 Pa. 216; Taylerstown & Claysville Road, 6 D. & C. 565; McCormick v. Twp., 246 Pa. 169.

Where a contract is averred the party complaining must allege compliance according to terms or show that the other party prevented such compliance: West Republic Min. Co. v. Jones, 108 Pa. 55; Hartman v. Meighen, 171 Pa. 46; Wright v. Barber, 270 Pa. 186.

The county only is responsible for the construction, maintenance and repair of county roads: Blainesburg-West Brownsville Road, 293 Pa. 173.

Funds for permanent improvement of highways by townships should be provided for by interest-bearing bonds.

Parties dealing with townships are bound to know the limited powers of townships to contract: Foresman v. Twp., 297 Pa. 369; Trevorton Water Supply Co. v. Twp., 259 Pa. 31.

Where the court's decision on questions of law raised in the affidavit of defense disposes of the whole case, judgment should be entered for the defendant: Penna. Lubricating Co. v. Wilhelm, 255 Pa. 390; Robinson Twp. v. Cook, 91 Pa. Superior Ct. 207; Hutchinson Baking Co. v. Marvel, 270 Pa. 378.

OPINION BY MR. JUSTICE KEPHART, June 27, 1931:

The County of Greene claimed from Center Township the sum of $42,674.31 under the following circumstances: As a result of a resolution passed on February

5, 1919, the township supervisors presented their petition to the county commissioners in which they set forth that a certain highway was in need of reconstruction and, as the county was contemplating taking over and improving this road, the supervisors by resolution agreed for and on behalf of Center Township to provide for the payment of and to pay to the County of Greene of the one-half of the total expense of said improvement. On receipt of this petition, the commissioners, by resolution, directed surveys, plans, and estimates of the road to be made, and authorized the necessary steps to be followed under the law to take over and improve the road. A petition was later presented to the court of quarter sessions setting forth all the facts required by the Act of May 11, 1911, P. L. 244. It further stated that the township had agreed to pay one-half the cost of construction. Notice of the hearing before the grand jury was given according to law and that body approved the project. No exceptions having been filed during the period fixed therefor and no one appearing to object, the application was approved by a decree nunc pro tunc, entered as of 1923. The court then authorized and directed the county to make the improvement.

Before the approval, the commissioners let a contract for the construction of the highway, inadvertently providing therein that the entire cost of construction was to be paid by Greene County. This was contrary to proceedings had in court, since one-half was to be paid by Center Township. Later, on February 21, 1924, the commissioners, on discovering the mistake, notified Center Township that they proposed to ask for approval of the proceedings and authority to contract as contemplated thereby.

The court confirmed the proceedings and directed the commissioners to make a contract wherein the cost of construction would be borne equally. The township, with full knowledge of the proceedings, made no objection. The road was constructed under the new contract.

During the period of construction monthly estimates of the work done and of the township's share of the cost were furnished the township and received without any protest. After the work was finished, the township refused to pay its half of the cost; hence this suit. On facts thus stated questions of law as to the sufficiency of the statement were interposed as a defense.

The main ground of attack was that there was no contractual relation between the plaintiff and defendant under which liability could be predicated. The court was of opinion that there was no meeting of minds of the parties and hence no contract resulted. Judgment was directed for the defendant, and the case is here on appeal.

If for no other reason, the cause must be reversed on the authority of Rhodes v. Terheyden, 272 Pa. 397, and Winters v. P. R. R. Co., 304 Pa. 243. No opportunity was given plaintiff to file an amended statement of claim wherein a better statement of facts would set forth a cause of action. The law requires this in all cases where such statement can be furnished.

Regardless of this, the chief difficulties arose from the attitude in which the proceedings were regarded by the court below. They were treated as though the matter in suit was a contract between individuals, whereas the municipalities were following a statutory method by which the State's political subdivisions of government might improve the State's property—its highways, entrusted to their keeping. Furthermore, the Act of 1917 was not read as a supplement to the Act of 1911, whereas it should have been read in the light of the primary purpose embodied in the Act of 1911 and in connection with it.

We stated in Westmoreland Chem. Co. v. Public Service Commission, 294 Pa. 451, 456, that the highways of the Commonwealth, apart from those owned privately, such as turnpikes, are the property of the State. It may set up within constitutional limitations any agency it

sees fit to improve, maintain, repair, administer and control them. It may impose the cost incident thereto entirely on one agency to the exclusion of another, or it may permit them to agree on a division of costs. We need not repeat what was there said in historical discussion of the subject of roads. Our late Brother SADLER, in Garr et al. v. Fuls et al., 286 Pa. 137, at page 145, stated: " 'A county organization is created almost exclusively with a view to the policy of the State at large [with respect to highways]...... With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, and are in fact but a branch of the general administration of that policy': Freeze v. Columbia Co., 6 W. N. C. 145, 146. And, in the building of roads, it is acting in its governmental, rather than business, capacity." Townships are in the same situation as counties with respect to roads. See Cheltenham Twp. v. P. R. T. Co., 292 Pa. 384, and North Middleton Twp. v. Weary, 78 Pa. Superior Ct. 503. We must look to the several acts of assembly under which these subdivisions proceed in the matter of improving roads and the payment of cost therefor in order to ascertain the liability, if any, of the township.

The County Road Act of 1911, P. L. 244, first concerns us. Under this authority the several counties, among other things, may take over and improve township roads as county roads. The act sets forth a comprehensive procedure for that purpose. To encourage the improvement of such highways the Act of May 24, 1917, P. L. 291, was passed. It relieved the county of a part of the expense of the improvement and had the effect of stimulating improved road building.

The Act of 1911, the first County Road Act, was designed to provide means whereby a county might locate originally, open, and construct new county highways, or take exclusive control of and improve any existing township road, to be thereafter known as a county

road. The procedure for effectuating these purposes was not difficult; the authority was to be exercised "whenever the commissioners or a majority of them shall by resolution duly adopted deem it expedient so to do, and upon approval thereof by a grand jury and by the court of quarter sessions, as hereinafter provided." Section 3 of the act states that, when such resolution has been adopted, the county shall cause to be prepared surveys, plans and an estimate of the cost of the proposed improvement, which shall be presented, by petition, to the court of quarter sessions. If a majority of the grand jury approve, the court shall fix a time for filing exceptions to the proceedings, "and upon hearing thereof the said court may, for cause shown, disallow said application." Otherwise, the application shall be approved, and "the said court shall thereupon order that *the said improvement shall be made and constructed* in accordance with the plans and surveys accompanying the said application." Section 5 confers the power of eminent domain, but such power shall be exercised only "when such application, surveys, and plans shall have been finally approved by such court, and said public improvement ordered to be made as aforesaid." Section 12 reads that "after said surveys and plans, and the aforesaid application to the court of quarter sessions, shall have been approved by the court, and the said public road or highway as decreed by said court of common pleas ordered to be made and constructed in accordance therewith," the county commissioners may invite proposals, accept bids, and award the contract to the lowest bidder.

The Act of 1917, expressly supplementary thereto, reads as follows: "The proper authorities of any......
township......are hereby authorized to enter into a contract......with the commissioners of any county
......providing that the......commissioners shall construct an improved highway......under the provisions
of the act to which this is a supplement [Act of 1911,

P. L. 244] and the expense or cost of said construction shall be borne jointly by the said......township...... and the said county, in such ratio or proportions as may be agreed on." This act has reference to the Act of 1911, which, as has been shown, states the procedure necessary for a county to take over and improve a township road. It confers on the township supervisors authority to contract with the county commissioners that the latter should construct an improved highway under the Act of 1911.

With the provisions of these enabling acts in mind, when the county received the township resolution, whereby the township undertook to provide for payment to the county of one-half the total expense of the proposed improvement when due, the county followed the only possible procedure it could follow under the then existing law; it adopted a resolution stating that it was deemed expedient to improve permanently this section of road (describing the Oak Forest Road in Center Township, as noted in the petition of that township) and, as stated above, directed the engineer and solicitor to take the necessary steps to take over and improve the road, as contemplated by the Act of 1911. Pursuant to this resolution, a petition was presented to the Court of Quarter Sessions of Greene County, containing the plans, surveys, and estimates. These were duly laid before the grand jury, approved by that body, and certified to the court. The time within which exceptions could be filed having passed and no exceptions having been filed, the court made a final order and decree on May 12, 1924, authorizing and directing the county to take over and improve the highway and to let a contract or contracts for the construction thereof.

This was the most that the county could do towards the acceptance of the offer contained in the original resolution of the township, and this was sufficient to subject the township to liability for its proportional share of the cost of the construction of the improved highway.

We repeat, when the township resolution was adopted and delivered to the commissioners, the county could not contract with the township or with any other party for the construction of the improved highway; for such highway could be contracted for and constructed only under the enabling authority of the Act of 1911; and a strict compliance with its terms required that authority to contract be secured from the court. Counties and townships do not have common law powers to build or improve roads. When they act in such matters they must point to an act of assembly for authority. In the present instance this authority is found solely in the Act of 1911. The title to the Act of 1917 authorized "boroughs, towns and townships to enter into contracts to aid in the construction......of roads," and the act used the words "contract," "with the commissioners," to "construct an improved highway," "under the provisions of the Act" of 1911. Thus the authority of the counties to contract was still limited by the Act of 1911, and the legislature, by the Act of 1917, intended the authority contained therein, as it relates to counties, to be taken in connection with the limitations imposed by the Act of 1911.

The recital of provisions in the Act of 1911, given above, is convincing that upon receipt of the township resolution the county authorities were in no position to make a formal contract binding them to the construction of this section of road. How could the county formally bind itself to do an act, when the indispensable prerequisite to the doing of this act was the obtaining of the approval of the grand jury and the court of quarter sessions? Upon proper exceptions taken, the court might disallow the petition, and the county would be helpless to carry through the proceedings. If the township had so desired, and, since it had ample notice of all these proceedings, it might, by suitable exceptions, have presented weighty reasons which would have resulted in the disallowance of the project. The county did not even

possess the power of eminent domain prior to approval by grand jury and court, nor could the county invite proposals, accept bids, or award contracts for the construction until such approval had been obtained, as section 12 of the act discloses. When, however, the approval of the grand jury and the court has been obtained, section 3 of the Act of 1911 declares that the application shall be approved, and then, with the emphasis of a command, that "the court shall thereupon order the said improvement shall be made and constructed ......; and thereupon......any extension, alteration, etc......., as set forth in said proceedings, shall remain absolute." From this it appears that, when once the court and grand jury have acted, *the county is bound by an order of court* to carry through the proposed improvement, unless a subsequent order relieves them, though at no time prior thereto was it free to contract with the township in respect to it; the county, thus situated, has no choice but to proceed, but appellee would have us hold that the township could then withdraw its offer. The authority so to act after the county has obligated itself must appear by plainer and more emphatic words than shown by the several acts of assembly.

It is evident, therefore, that what the legislature intended, when it used the word "contract" in the Act of 1917, was that the township should indicate a willingness or agreement to be bound under the Act of 1917, and when it had done so, the county commissioners should proceed under the Act of 1911 to construct the improved highway as contemplated in the township resolution.

Moreover, the Act of 1917, being prospective in view, clearly contemplates action under the Act of 1911. Further action could not be undertaken by the county, with protection to itself, unless it was intended that the township should then be bound by whatever further proceedings were accomplished. The county, because of the

township resolution, and in furtherance thereof, instituted the necessary proceedings, secured the requisite authority, and in fact did improve the highway under the Act of 1911.

While the resolution of the county commissioners did not, in so many words, accept the proposal of the township, the same result was accomplished, so far as it was legally possible, when the county adopted a resolution covering the subject-matter of the township resolution, undertook the necessary proceedings called for by the Act of 1911, and, in particular, made application to the court for authority to improve the highway, setting forth the township resolution and the fact that the township had agreed to pay one-half the cost of the improvements. These steps would, in law, be an acceptance of the township proposal, and the township would be conclusively bound when the proceedings thus instituted were favorably concluded. They were public acts of which the township had due notice, and if it did not wish to be bound, it could have objected at the appropriate time before the order of the court became final.

Even if the element of contract were not present, the reliance placed by the county upon the resolution of the township, to the former's detriment after the latter had initiated the proceedings and carried them through, awarded the contract of which it had notice, and other matters here related, all without protest, would, under the peculiar requirements of the law affecting these municipalities, raise an estoppel amply sufficient to bind the township to the payment of its share of the cost.

To hold as the court below did would imperil proceedings for State and county aid, where the State has adopted a similar method of proceeding. These questions should as far as possible be viewed from the standards of practice adopted in highway construction by the state department, and the methods there employed as evidencing an agreement to be bound for a proportion of the cost.

The objection that the county resolution did not specifically refer to the township resolution is immaterial. It was not necessary to make such reference. It was only necessary to take official steps to "construct an improved highway" along the route indicated in the township resolution. Under the county resolution, the proper officers took these steps by making a survey, plans, specifications, and estimates of cost, and thereupon petitioned the proper court, setting forth all these matters and asking for the authority provided by the act. The court and grand jury gave such authority, after considering these proceedings together with,—as is more important for this case,—the averment in the petition, with the original resolution of the township attached, that Center Township had agreed to pay one-half the cost. The petition to the court, as an official act, completely evidenced the county's acceptance of the township's offer.

The Act of 1911 placed the ultimate determination of the entire arrangement between the municipalities with respect to surveys, plans and estimates of cost, in the control of the court. It provided the "court shall thereupon order that said improvement shall be made and constructed, in accordance with the plans and surveys accompanying said application." See section 3 of the Act of 1911. From this it is clear that the township had no voice in the matter of building the highway. How the road was to be constructed, that is, what plans, specifications, or alignments, etc., were to be used, was determined solely by the Act of 1911 and its supplements. Section 2 of the Act of 1917 recognizes this. On that account, under the law, the county was not obliged nor permitted to enter at any time into a formal contract with the township covering the subject-matter of the Act of 1911, as supplemented by the Act of 1917. It may be well to say that, while as between individuals dealing with similar business matters, something should be known of the cost, etc., before entering into a con-

tract, yet the State in dealing with its property in the hands of its agents has determined otherwise.

It is possible that in a given case the township might wish to be relieved of its obligation while the proceedings were pending in court. The procedure contemplates such step by providing that the court for cause deemed sufficient may disapprove the project. There may be instances, such as an objection by the township as to cost or other matters, where the power to disapprove may be wisely exercised. But here the township did nothing, though it had notice at all times of the proceedings before the court and the action of the county in relation to the contract. This was the effect of the notice given through the newspapers under the court's direction. There can be no doubt that the commissioners, when they acted, followed the order of the court to improve the road under the plans and specifications then submitted at equal cost to the County of Greene and the Township of Center, and let a contract; it was then too late for the township to avoid its responsibility, even if it might have attempted to do so, which it did not. But, notwithstanding this, their resolution, which continued to operate after the county adopted its purpose, became by the order of the court a binding obligation. It was the culmination of the purpose inaugurated by the township in its resolution of February 5, 1919.

Counsel for appellee contends that before the letting of the second contract correcting the mistake in the first, the commissioners believed the township was not liable and so expressed their belief by asking Center Township to again agree in writing to pay one-half the cost of construction of the highway. While this statement does not put the matter accurately, the time had expired for filing exceptions to the court proceedings. The commissioners realized that they could not by word or resolution change this status. When these proceedings had been carried through in the manner indicated, the county had been placed in a disadvantageous posi-

tion; it became liable for repair, maintenance, and any accidents that might happen on the highway after it was approved as a county road: McCormick v. Allegheny Co., 263 Pa. 146; Clark v. Allegheny Co., 260 Pa. 199. The work was started, monthly estimates showing the amount due from the township were received by the township from the county, and no protest was ever made that the township disclaimed liability. This present unwillingness to pay is most ungracious on the part of the township.

Objection is made that the county did not proceed to build the entire highway. The act does not require this to be done at once. The road was over five miles long and must be built as the county finances permitted. The Act of 1917 recognizes that there may be only a partial construction of a road. This may be secured by court order.

What is a reasonable time within which the county should proceed on receipt of the township resolution is not expressed in the several acts of assembly, but it is fair to assume the State had in mind consideration of the financial requirements of the several districts, as well as the projects which the county might then have on hand prior to the one then submitted; what might be an unreasonable time as between individuals could be clearly reasonable in a matter of this kind. Experience has taught that a delay of four or five years in ultimate completion is not unreasonable in an improvement of this character. We will not discuss the many acts of assembly which give the state highway department authority to regulate and control the building of all roads. It is not necessary in the present case.

Complaint is made that the county has or will return this road to the township to be maintained. If it did so it would be in furtherance of the agreement between the township and the county when the resolution was adopted. The township agreed "to pay the cost of maintaining said road after its reconstruction." If the county thereafter has vacated the part unimproved as a county

road, the township has only itself to blame. They have not acted fairly in withholding payment of a just obligation due the county.

Some mention has been made of the possibility of this debt's exceeding the constitutional limitation. We have nothing before us on this subject, and without expressing any opinion on the question ultimately, we do not say that, if the debt at the time the resolution was adopted or at the time the amount was actually found to be due exceeded the constitutional limitation, such position could not be set up. The fact that the township decided to pay the debt by a road tax would not invalidate the proceeding. It had the power to do this and the additional right given by the Act of 1917 was not exclusive.

The contention that the township supervisors could not bind their successors to improve or pay for improvements of future construction, while of merit, does not control the present case. Mr. Justice SIMPSON, in Moore v. Luzerne Co., 262 Pa. 216, at page 220, has well set forth the limitations, but, as he points out, there are contracts which do bind succeeding administrations. Commitments for road building begun during one term of office and incompleted are contracts of that nature. Here the resolution of the supervisors and commissioners was passed during their incumbancy in office and the proceedings were immediately inaugurated thereafter. Under these circumstances, with the highway completed under the terms of the resolutions therein set forth, the acts of the former officials, against which no protest had been made, would be binding upon the township and the county. Of course, neither the township nor the county can burden themselves with future commitments to the embarrassment not only of the succeeding officers but of the municipalities as well. Such conduct has been expressly condemned by this court, but the facts in the instant case do not bring them within that condemnation. Under all the circumstances, the

question of binding successors in office passes out of the case.

The judgment of the court below is reversed, and the defendant is given leave to file an affidavit of defense to the merits within fifteen days after the return of this record to the court below.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

There is no statute in Pennsylvania which imposes any obligation upon the defendant township to pay any part of the cost of the road which the plaintiff county built for a distance of 5,950 feet in this township. Any obligation of the township to pay any part of the construction cost of this road must in the present state of the law have been self-imposed, as by no outside agency could it be imposed legally. If the obligation was self-imposed, it must have been imposed by contract. The Act of May 24, 1917, P. L. 291, supplementing the Act of May 11, 1911, P. L. 244, empowers the authorities of any borough or township or incorporated town to enter into a contract or contracts with the commissioners of any county for the construction of highways, and provides that payment for the construction shall be borne jointly by the borough, township, or incorporated town, and the county, in such ratio or proportions as may be agreed on in the contract or contracts. Where is the contract between plaintiff and defendant in which defendant assumed the burden of paying one-half of the construction cost plaintiff is seeking to collect? I search the record in vain for a contract in which the Township of Center assumed any such obligation.

There is nothing in the law of contracts more completely fundamental than that a contract is based upon an offer and acceptance and that "an acceptance must be absolute and identical with the terms of the offer. ...... If A offers to X to do a definite thing and X accepts conditionally, or introduces a new term into the acceptance, his answer is either a mere expression of

willingness to treat, or it is in effect a counterproposal": Anson on Contracts, 2d Am. edition, 22, 23. Another fundamental rule of the law of contracts is that if the terms of an alleged contract are so vague and indefinite as to be incapable of creating legal relations between the parties, it is unenforceable. "In order that an offer may be made binding by acceptance, it must be made in contemplation of legal consequences; a mere statement of intention made in the course of conversation will not constitute a binding promise, though it be acted upon by the party to whom it was made": Anson on Contracts, 2d Am. edition, 21, 22. "Both parties [to an agreement] must assent to the same thing in the same sense, and their minds must meet as to all the terms": 13 Corpus Juris, section 48, page 264, citing Powers v. Curtis, 147 Pa. 340.

Page on the Law of Contracts, volume 1, page 45, lays down this principle: "The offer must not merely be complete in terms, but the terms must be sufficiently definite to enable the court to determine ultimately whether the contract has been performed or not."

In the case before us, the county never accepted the offer made by Center Township, even if the resolution of the township, dated February 5, 1919, can be construed as an "offer." This resolution declared that the commissioners of Greene County "contemplated" taking over and reconstructing under the Act of May 11, 1911, P. L. 244, and its amendments, the Oak Forest Road, a public roadway between certain points in Greene County, a section of 12,140 feet of the roadway so to be reconstructed being in the defendant township, and the supervisors resolved on behalf of the township and agreed for themselves and their successors in office to provide for the payment of, and to pay to the County of Greene from the township funds, one-half of the total expense of the improvements, when due, and to levy a cash road tax to pay all costs of maintaining the road after construction. On May 12, 1919, the commissioners

of Greene County duly resolved to reconstruct and improve Oak Forest Road, extending through, inter alia, Center Township, and they authorized the county engineer to prepare surveys and plans of this highway, together with an estimate of the cost, and the county solicitor to prepare a petition to be presented to the court of quarter sessions and to obtain an order directing that notice be given that the petition, plans, surveys and estimated cost of the permanent construction of the road would be laid before the grand jury at the June Sessions, 1919. The matter was duly presented to the court of quarter sessions and pursuant to court order it was laid before the grand jury and its approval returned and certified to the court. No exceptions were filed, and on May 12, 1924, the final order and decree was entered authorizing Greene County to enter upon, take over and improve this highway and let a contract or contracts for the construction thereof under specifications prepared by the proper county authorities. Plaintiff county proceeded with the construction, not of 12,140 feet of Oak Forest Road in Center Township, but of only 5,950 feet.

Nothing can be clearer than that these respective resolutions of the supervisors and commissioners do not constitute a contract between the parties. The resolution of the county commissioners made not the slightest reference to the resolution of the supervisors of Center Township passed three months earlier. The county commissioners simply declared that they deemed it expedient to improve the Oak Forest Road in Center Township and authorized the county engineer to prepare surveys, plans and an estimate of the cost. The county commissioners' resolution ignored the supervisors' resolution entirely, and they proceeded to construct only 5,950 feet of the 12,140 feet the township wanted. They did not even indicate that any financial help from the township was wanted or would be accepted. The township supervisors were not consulted as to the character, length,

width or cost of the road to be built. The court below, in the opinion of President Judge SAYERS, pertinently says that "the resolution passed by the county commissioners did not refer to the resolution, request or proposal of the township supervisors, but simply sets forth a description of the road and the purpose of the county to improve the same, a direction to the county engineer to prepare plans and an estimate of the cost and expense of the improvement, and a direction to its solicitor to present the matter for approval by a grand jury and the court. The county resolution does not recite that it is accepting any resolution or proposal of Center Township to join in the expense of building a road, nor does the statement set forth that any plans, specifications or estimates of cost were submitted to the supervisors of Center Township or that they joined in the proceeding before the grand jury or approved the plans, specifications or costs of the building of the road at any time. The resolution of the supervisors of Center Township did not contain a complete proposal because there was no specification showing the width, character or cost of the highway proposed to be improved. The terms of the two resolutions do not indicate a meeting of the minds of the parties: Northwestern, etc., Co. v. Campbell, 78 Pa. Superior Ct. 97. It is nowhere alleged that the township ratified the kind, character or cost of the road proposed to be constructed. 'Contracts are derived from consent and cannot as a rule be binding where there is no real consent established': Rismiller v. Evangelical Lutheran Congregation, 268 Pa. 41."

In the opinion of the majority appears the following statement: "The chief difficulties arose from the attitude in which the proceedings were regarded by the court below. They were treated as though the matter in suit was a contract between individuals, whereas the municipalities were following a statutory method by which the State's political subdivisions of government might

improve the State's property—its highways, entrusted to their keeping."

I find in the law of Pennsylvania no such statutory method as that invoked here to make a township pay a part of the cost of a road built by a county in that township. All the township did was to manifest a willingness to enter into a contract for the construction of 12,140 feet of road. Its manifestation was never acknowledged and no contract was ever entered into by the township to pay one-half of the cost of building any part of the Oak Forest Road. As a matter of fact, only 5,950 feet of the road were built.

The statutory method of imposing an obligation upon a township for any part of the cost of a county road built in the township is the method provided by the Act of May 24, 1917, which empowers the proper authorities of the township to enter into a contract with the commissioners of the county. Under the law of Pennsylvania a contract means exactly the same thing when used in a statute as when used elsewhere. Our law of contracts will be in a state of chaos if we hold otherwise. The majority opinion is based on the theory that the word "contract" when used in the Act of 1917 means something entirely different from what it hitherto has always meant. The majority opinion says, "It is evident, therefore, that what the legislature intended, when it used the word 'contract' in the Act of 1917, was that the township should indicate a willingness or agreement to be bound under the Act of 1917, and when it had done so, the county commissioners should proceed under the Act of 1911 to construct the improved highway as contemplated in the township resolution." My opinion is that the township can be "bound" under the Act of 1917 to pay only what it agrees to pay in a contract definite in all its terms. Surely the township ought to know what a proposed road will cost before it can be obligated to pay half of that cost.

The majority opinion also says, "When the township resolution was adopted and delivered to the commissioners, the county could not contract with the township or with any other party for the construction of the improved highway; for such highway could be contracted for and constructed only under the enabling authority of the Act of 1911; and a strict compliance with its terms required that authority to contract be secured from the court." In my view nothing could have been simpler or easier than for the county commissioners to have entered into a contract definite in all its terms as to cost, size, quality, etc., of the proposed road, with the supervisors of Center Township, expressly subject to the approval of the proposed road by the grand jury and the court of quarter sessions as provided in section 3 of the Act of 1911.

The Act of 1911, after providing in section 3 for a petition by the county commissioners to the court of quarter sessions showing the survey, plans and estimated cost of a proposed county road and providing for the approval or disapproval by the grand jury and the court of quarter sessions of the proposed road as planned, provides later, in section 18, that *boroughs* can by ordinance agree with the county commissioners to pay 33⅓ per cent of the cost of construction of that part of a continuous county highway that lies within the borough. Apparently this agreement can be entered into after the county highway has been constructed to the borough limits, and, as section 18 says, "where the failure of said borough to improve said highway within its limits would leave a break or unimproved section in such a continuous highway." Then according to this section 18 "proper officials of the borough [can] enter into an agreement with the county commissioners" to build a road "which will connect the two ends of such highway or highways."

If county commissioners and *borough* officials can make a formal agreement based on an ordinance, sharing the cost of construction of a highway through a borough

as provided by section 18 of the Act of 1911, surely county commissioners and *township* officials can enter into a contract sharing the cost of construction of an improved highway through a township as provided by section 1 of the Act of 1917, P. L. 291. These contracts with either borough or township authorities can be made before or after the grand jury and court of quarter sessions have approved the proposed road. It is not at all unusual for agents to enter into contracts subject to the approval of their principals or of coördinate authority, just as, for example, the president of the United States enters into treaties (contracts) with foreign governments subject to the approval of a coördinate branch of the government, to wit, the United States Senate. The majority opinion asks, "How could the county formally bind itself to do an act, when the indispensable prerequisite to the doing of this act was the obtaining of the approval of the grand jury and the court of quarter sessions?" The answer to that query is that the county did not have to formally bind itself by contract with the township to build a road before the necessary approval of the grand jury and the court of quarter sessions was obtained but it could enter into a contract, definite in all its terms, with the township whereby both the county and the township would be bound to share the cost of the road in the event that the grand jury and the court of quarter sessions later approved the proposed road; or the county commissioners could wait until such approval had been obtained and then enter into a contract with the supervisors providing for the township's bearing a share of the cost of the highway. If the township refused to enter into such a contract after the approval of the court and grand jury had been obtained for the proposed road, and the commissioners then felt that they had been misled by the expressed willingness of the township supervisors to enter into negotiations leading to a contract to pay a proportion of the cost of the road through the township, it would be a simple matter for

the county commissioners to petition the court and ask that the previous order made at the commissioners' request for the construction of the proposed road be vacated. The better practice undoubtedly would be for the commissioners and township supervisors first to enter into a formal and definite contract to share the cost of the construction of the road through the township, and in that contract to provide that it would not be given legal effect until the approval of the proposed road by the court and the grand jury had been obtained.

The view herein expressed that the law and canons of construction relating to contracts apply to *all* contracts, whether they are provided for in statute or otherwise, and to those between public corporations as well as to contracts between individuals, is, I think, sustained by the authorities.

McQuillan on Municipal Corporations, 2d edition, page 796, section 1265, lists among "the rules applicable to all contracts, whether a municipal corporation is a party thereto or not," the following: "Mutuality is essential to a contract; there must be an offer and acceptance."

In Donnelly, Law of Public Contracts, the author says at section 172: "Public contracts are no different from private contracts. The obligation of each endures under the law, and the former are governed by the same canons of interpretation as apply to contracts between natural persons." See also Dillon on Municipal Corporations, pages 1235, 1236.

In the case before us there was no mutuality between the plaintiff and defendant and there was no offer and acceptance, and the authorities hold that mutuality and offer and acceptance are just as essential in municipal contracts as in those of individuals.

To hold the defendant township liable in this case means that whenever a township's supervisors express a willingness to enter into a contract to pay one-half of the cost and expense of constructing a highway the

county is given carte blanche to go ahead and build the road or a part of it with any material and at any cost, without consulting the township, and then make the township pay one-half of the cost of this construction. This would be analagous to A's telling B that he, A, would be willing to enter into a contract with B to pay one-half of the cost of building a house, whereupon B proceeds, without consulting A, to build a house of any kind and size that suits him, B, and at any cost which he alone decides on, and then attempts to make A pay one-half of that cost. This impresses me as a novel doctrine and I find no precedent for it anywhere. If this is now to be the law, it will in my judgment be a wide departure from the law heretofore controlling the creation of reciprocal rights and obligations.

In 13 Corpus Juris 290, section 100, appears the following: "There is no meeting of the minds of the parties while they are merely negotiating as to the terms of an agreement to be entered into. To be final, the agreement must extend to all the terms which the parties intend to introduce, and material terms cannot be left for future settlement."

I think the language of this court in the case of Hepburn v. City of Phila., 149 Pa. 335, 340, applies here: "The papers referred to......set forth the terms upon which the city was willing to enter into a contract with him, but neither singly nor altogether do they constitute a valid contract, nor in fact any contract. They are merely negotiations preparatory thereto."

The cases of Rhodes v. Terheyden, 272 Pa. 397, and Winters v. P. R. R. Co., 304 Pa. 243, are emphasized in the majority opinion. The first case lays down this principle at page 401: "The question to be decided under section 20 of the [Practice] Act, which provides only 'a substitute......for the common law demurrer' (Hutchinson Baking Co. v. Marvel, 270 Pa. 378, 381), is not whether the statement is so clear, in both form and specification, as to entitle plaintiff, without amendment, to

proceed to trial, but whether, upon the facts averred, it shows, as 'a question of law,' that plaintiff is not entitled to recover." It is obvious to me in the case now before us that as a matter of law plaintiff under the facts averred was not entitled to recover. The court below was right, I think, in so ruling. The second case holds that even if a statement of claim in trespass is insufficient yet if it is evident that a better statement of facts could show an enforceable claim, the court should grant plaintiff leave to file a further statement of claim within a limited time. However in the second case this court agreed with the court below that recovery could not be had even under the facts set forth in plaintiff's petition to file an amended statement. The plaintiff in the case now before us makes no claim that any material fact was omitted from its pleadings, and it is not evident that any better statement of facts was possible. On the contrary it is evident that plaintiff's action was brought on a contract that never existed. If the case had proceeded to trial on a nonexistent contract, it would have been the duty of the trial judge to give binding instructions for the defendant.

It appears by supplemental record filed in this case that since the beginning of the present action, part of the road in Center Township taken over by the County of Greene by its proceedings, No. 4, June Sessions, 1919, as a county road and not improved, being 6,190 lineal feet of the 12,140 feet taken over, has been returned to the Township of Center by proper proceedings in the Court of Quarter Sessions of Greene County. This furnishes further proof of the fact that if the resolution passed by the township supervisors on February 5, 1919, can be construed as an offer to pay one-half the cost of improving the 12,140 feet of Oak Forest Road which in the resolution the supervisors declared the county commissioners contemplated taking over for the purpose of improving and reconstructing the same, this "offer" was never accepted by the commissioners in

terms identical with it.  As we have already said, the resolution of the county commissioners of May 12, 1919, made no reference whatsoever to the supervisors' resolution, but if by any reasoning it can be considered a response to the supervisors' resolution, it is at most a mere willingness to treat, or in effect a counter-proposal.

I cannot interpret the Act of 1917, supra, as using the word "contract" in any other sense than it has been used in the law for centuries.  "The current of authority at the present day is in favor of reading statutes according to the natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending their operation": 25 Ruling Case Law, section 217, page 962.  I think it is the duty of the court to interpret the word "contract" in that act according to its "natural and most obvious import."  That is the only import it has hitherto had.

I would affirm the judgment of the court below.