## Gross et al. v. Westmoreland County

*Paul K. McCormick*, for plaintiffs.
*H. H. Whitehead*, for defendant.

McWHERTER, J., June 9, 1944.—The act of assembly adopted May 28, 1943, P. L. 796, provides that any roads or highways for which any county is responsible for construction or maintenance shall be adopted by the Commonwealth as State highways and thereafter be maintained by it, if and when the county commissioners of the county consent thereto by resolution.

On May 26, 1944, the County Commissioners of Westmoreland County adopted an appropriate resolution providing for the transfer of its control of approximately 26 miles of public highways to the State Department of Highways in pursuance of said act of assembly. These roads were in outlying portions of the county and mostly made up of short disconnected sec-

tions of highway, the longest being about five miles in length.

Plaintiffs, all of whom are citizens of Westmoreland County, and each but one of whom holds the office of road supervisor in the township, filed a bill in equity asking the court to restrain the county commissioners from proceeding with the transfer of the roads in question.

Plaintiffs assert that the Act of 1943 is unconstitutional; that the commissioners were without authority to pass the resolution in question; that the county's share of gasoline tax received from the Department of Revenue far exceeded the cost of maintenance of these roads, and that the action of the commissioners, if permitted to stand, will result in great loss to the County of Westmoreland.

At the preliminary hearing plaintiffs proved that the construction of the roads in question cost the taxpayers approximately one million dollars, submitted a schedule of the receipts from gasoline taxes for the last seven years, the amount thereof used for maintenance of county roads, sinking fund requirements, and the amount turned over to the various townships in aid of their road programs. The gasoline taxes received far exceeded the maintenance of the county roads. They also proved that saving to the county by reason of the transfer of the roads in question would be negligible, in that the county would still have to continue the same office force, the same amount of road equipment, and practically the same force of road workers. Defendants furnished the court with a map showing the roads in question, the nature and construction of each, and data indicating the location and mileage of each section of road involved.

At the beginning and after the termination of the taking of testimony, counsel for defendants moved to dismiss the bill. The motion was overruled, action thereon was reserved, and an order made continuing lished by law or by legally constituted authority. The

the preliminary injunction meanwhile. We now come to a consideration of defendants' motion.

*Opinion*

While there is no question that under given circumstances a court of equity has the power by injunction to restrain administrative bodies within its jurisdiction from the improper discharge of their administrative functions, yet, generally speaking, the exercise of the power of injunction as to public administrative bodies is limited to where the action of the body is arbitrary or capricious or where there is a gross abuse of discretion. In a number of instances the legislature has made statutory provisions for court approval of certain actions of county commissioners, such as the purchase of land for public use, the erection of certain public buildings, etc., but the Act of May 28, 1943, makes no such provision for court approval. Under the act the county commissioners have the sole and exclusive right to decide for themselves whether the control of county roads should or should not be transferred to the State Highway Department. The wisdom of the action is a matter for the county commissioners to pass on, not the courts of Westmoreland County. The mere exercise of that right, standing alone, is not sufficient to permit a court of equity to decide, without more, that the action was either arbitrary or capricious. There was no testimony submitted by plaintiffs on which could be based a finding that there was an abuse of discretion by the majority of the board of county commissioners. We are then left to the consideration of the alleged unconstitutionality of the Act of 1943.

Under English law highways were the property of the King. After the Commonwealth of Pennsylvania became a sovereign State all highways, roads, streets, and bridges within its territorial limits, apart from

privately-owned turnpikes, became the property of the State. In the early days, in order to encourage communication between our sparsely-settled districts, the State, acting either directly or through many bodies known as commissions, laid out highways between distant points in or through counties. In 1876 these roads built or laid out were placed under local control and the State withdrew actively from road building or planning. The work was continued under municipalities and townships under the General Road Law, which has functioned since 1836. Later, under what was known as the Flinn Act, counties were enabled, with court approval, to make a system of highways within their borders and have them adopted as county roads. In 1911, under the Sproul Act of May 11, 1911, P. L. 244, a large number of highways in the Commonwealth were converted into a system of highways. The county and the State were given exclusive control of these roads. Through all the legislation the Commonwealth has retained its right as the sovereign to the ownership of all public highways, and the municipalities, including counties, when acting with respect thereto have been and are merely its agents.

The 26 miles of road in question here are not the property of the County of Westmoreland, nor are they owned by the taxpayers within its borders. The roads belong to the Commonwealth even though the county paid for them and has heretofore exercised control over them. In the early case of The Philadelphia and Trenton Railroad Company, 6 Wharton 25, in an opinion of the Supreme Court written by Chief Justice Gibson, it was held that in Pennsylvania the highways are the property of the State and subject to its absolute direction and control. The Chief Justice, at page 43, used the following language in discussing this important proposition:

"In England, a highway is the property of the king as *parens patriae,* or universal trustee; in Pennsyl-

vania, it is the property of the people, not of a particular district, but of the whole state; who, constituting as they do the legitimate sovereign, may dispose of it by their representatives, and at their pleasure. Highways, therefore, being universally the property of the state, are subject to its absolute direction and control. An exclusive right of ferriage across a navigable stream, which is a public highway, is grantable only by it; and the navigation of the stream may be impeded or broken up by it at its pleasure. In the construction of her system of improvements, Pennsylvania has acted on this principle. Her dams across her principal rivers to feed her canals, have injured if they have not destroyed the descending navigation by the natural channels; and this without a suspicion of want of constitutional power. The right of passage by land or by water, is a franchise which she holds in trust for all her citizens, but over which she holds despotic sway, the remedy for an abuse of it being a change of rulers and a consequent change of the law. No person, natural or corporate, has an exclusive interest in the trust, unless she has granted it to him. Her right extends even to the soil, being an equivalent for the six per cent. thrown into every public grant as compensation for what may be reclaimed for roads; and she has acted on the basis of it; for though damages for special injuries to improvements have been allowed by the general road laws, nothing has been given for the use of the ground. This principle was broadly asserted in the Commonwealth v. Fisher, (1 Penna. Rep. 466.)"

Greene County v. Center Township, 305 Pa. 79, was a case involving a dispute between a county and a township wherein the county claimed $42,000-odd from the township under an alleged agreement, whereby the county under the Acts of 1911 and 1917 took over a township road and constructed same, and thereafter the township refused to pay its share under the agreement. The court said (p. 86):

"We stated in Westmoreland Chem. Co. v. Public Service Commission, 294 Pa. 451, 456, that the highways of the Commonwealth, apart from those owned privately, . . . are the property of the State. It may set up within constitutional limitations any agency it sees fit to improve, maintain, repair, administer and control them. It may impose the cost incident thereto entirely on one agency to the exclusion of another, or it may permit them to agree on a division of costs."

Mr. Justice Sadler, in Garr et al. v. Fuls et al., 286 Pa. 137, at page 145, stated:

" 'A county organization is created almost exclusively with a view to the policy of the State at large [with respect to highways]. . . . With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, and are in fact but a branch of the general administration of that policy': Freeze v. Columbia Co., 6 W. N. C. 145, 146. And, in the building of roads, it is acting in its governmental, rather than business, capacity".

The Act of May 23, 1943, P. L. 796, is constitutional.

It is therefore quite apparent that the county commissioners have acted within the authority granted to them and that the injunction must be dissolved. It is also apparent that plaintiffs in bringing their bill have acted in good faith and as public-spirited citizens in an effort to make certain that the public business is properly conducted.

Although the amount of costs incurred in this proceeding is quite trivial, nevertheless, under the circumstances, the same should be borne by the County of Westmoreland.

## Decree nisi

Now, June 9, 1944, testimony having been taken at the preliminary hearing and defendants having moved the court to dismiss the bill, after argument and after

due consideration, it is ordered, adjudged, and decreed that the preliminary injunction heretofore issued be dissolved, that the bill of complaint be dismissed, and that the costs be paid by the County of Westmoreland. It is further ordered that the cash bond heretofore posted by plaintiffs be returned to the party or parties entitled hereto, their agent or attorney, and that no damages be allowed defendants.