## House et al. v. Pennsylvania Turnpike Commission

*Bailey & Rupp*, for plaintiffs.

*N. L. Wyniard, John D. Foller, Stanley C. Fellows,* and *H. C. Pepper*, for Pennsylvania Turnpike Commission.

SHEELY, P. J., fifty-first judicial district, specially presiding, May 25, 1942.—Plaintiffs brought these actions of trespass against Pennsylvania Turnpike Commission claiming compensation for damages alleged to have been sustained as a result of negligence on the part of an employe or agent of the commission. The commission filed affidavits of defense raising questions

678

of law, contending that it is an instrumentality of the Commonwealth, and as such, is not liable for the torts of its employes or agents.

The Pennsylvania Turnpike Commission was created by the Act of May 21, 1937, P. L. 774. The purpose of the creation of the commission is stated to be "in order to facilitate vehicular traffic between the eastern and western sections of the Commonwealth . . ." In section 4 of the act it is provided:

"The commission is hereby constituted an instrumentality of the Commonwealth, and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth."

Four of the five members of the commission are appointed by the Governor by and with the advice and consent of the Senate, and the fifth member is the Secretary of Highways who serves ex officio. The members of the commission are required to take the oath prescribed by article VIII of the Constitution of the Commonwealth. All contracts and agreements relating to the construction of the turnpike and connecting tunnels and bridges are required to be approved by the Department of Highways, and the construction must be under the supervision of the department.

The commission is granted the power of eminent domain and is authorized to issue "Turnpike Revenue Bonds of the Commonwealth" payable solely from the special fund created by the act for such payment. The bonds are required to be signed by the Governor and the chairman of the commission, and are free from taxation within the Commonwealth. Section 11 also provides:

"The accomplishment by the commission of the authorized purposes stated in this act being for the benefit of the people of the Commonwealth and for the improvement of their commerce and prosperity in

which accomplishment the commission will be performing essential governmental functions, the commission shall not be required to pay any taxes or assessments on any property acquired or used by it for the purposes provided in this act . . ."

The act further provides that no debt of the Commonwealth shall be incurred in the exercise of any of the powers granted by the act, or by the issuance of turnpike bonds. Under section 15, however, it is provided that when all bonds and interest have been paid, the turnpike and the connecting tunnels and bridges shall become a part of the system of State highways, and shall be maintained by the Department of Highways, free of tolls.

The right of the Commonwealth to have constructed the turnpike itself is undoubted, and if it had done so it would not have been liable for negligence of its servants. By the Turnpike Act the Commonwealth delegated to the commission all of its powers necessary to complete the construction of the turnpike, reserving to itself the right to supervise the contracts and the actual construction, but relieving itself entirely of any financial responsibility in connection therewith. The effect of the act, therefore, is that the Commonwealth, through the medium of the Turnpike Commission, will acquire the turnpike without binding itself for the cost thereof or assuming any responsibility in connection therewith.

The project is similar in many respects to the municipal authorities created by the Municipality Authorities Act of June 28, 1935, P. L. 463, county authorities created by The Second Class Township Law of May 1, 1933, P. L. 103, and the General State Authority created by the General State Authority Act of June 28, 1935, P. L. 452. A county authority has been held to be an agency of the Commonwealth: Tranter v. Allegheny County Authority et al., 316 Pa. 65. In Lighton et al. v. Abington Township et al., 336 Pa. 345, 354, it was said:

"They [municipal authorities] are public corporations, being corporate agencies engaged in the administration of civil government. The state may modify the part performed by its agencies in government by creating other agencies, subject always to constitutional limitations."

In Commonwealth ex rel. v. Major, 343 Pa. 355, it was held members of a board of a municipal authority were public officials, and in reaching that conclusion the Supreme Court quoted and relied, in part, upon section 15 of the Municipality Authorities Act of June 28, 1935, P. L. 463, which is in language almost identical with section 11 of the Pennsylvania Turnpike Act.

In Greene County v. Center Township, 305 Pa. 79, 86, Mr. Justice Kephart said:

"We stated in Westmoreland Chem. Co. v. Public Service Commission, 294 Pa. 451, 456, that the highways of the Commonwealth, apart from those owned privately, such as turnpikes, are the property of the State. It may set up within constitutional limitations any agency it sees fit to improve, maintain, repair, administer and control them. It may impose the cost incident thereto entirely on one agency to the exclusion of another, or it may permit them to agree on a division of costs. . . . 'And, in the building of roads, it [a county] is acting in its governmental, rather than business, capacity.' Townships are in the same situation as counties with respect to roads." See also Szilagyi et al. v. Bethlehem, 312 Pa. 260.

The fact that a toll is exacted from users of the turnpike does not change the character of its operation from that of a governmental function. In Geiger v. The Perkiomen & Reading Turnpike Road, 167 Pa. 582, 585, the Supreme Court said:

"The taking of tolls, it has been held, is only another method of taxing the public for the cost of construction, repair and reimbursement to the corporation for the capital invested. . . ."

In Brush v. Commissioner of Internal Revenue, 300 U. S. 352, 372, the Supreme Court of the United States said:

"If that service be governmental it does not become private because a charge is made for it, or a profit realized. A state, for example, constructs and operates a highway. It may, if it choose, exact compensation for its use from those who travel over it . . . but this does not destroy the claim that the maintenance of the highway is a public and governmental function."

We conclude that the Pennsylvania Turnpike Commission is a quasi-public corporation and, as such, is an instrumentality of the Commonwealth engaged in the performance of a particular governmental function. In this respect it resembles a school district which was held, in School District of the City of Erie v. Fuess, 98 Pa. 600, to be a corporation of a lower grade, and of less power than cities; having the characteristics of private corporations, and resembling more mere agents of the State. In Ford v. Kendall Borough School District, 121 Pa. 543, it was held that school districts are but agents of the Commonwealth, and are made quasi-corporations for the sole purpose of the administration of the Commonwealth's system of public education. It was there held that the doctrine respondeat superior, which applies to townships, boroughs, and cities so far as streets and roads are concerned, does not apply to school districts. In Carlo v. Scranton School District, 319 Pa. 417, 420, it was said:

"There is a distinction betwen the liability of a municipal corporation for the negligence of its employees and the liability of an agency of the Commonwealth whose sole purpose is the maintenance and support of the schools within its territorial division."

In Briegel v. City of Philadelphia, 135 Pa. 451, 458, it is said that "school districts are agencies of the commonwealth for a special and limited purpose, with no funds under their control but public moneys devoted

to a specific charity, and not divertible, even indirectly, to any other use."

Whether this distinction between municipal corporations and school districts be sound (see Ford v. Kendall Borough School District, supra, p. 549) is immaterial. The Turnpike Commission is an agency of the Commonwealth for a limited and special purpose with no funds under its control but the revenues from the turnpike which are specifically pledged for the payment of the turnpike bonds issued to pay the costs of construction. There is nothing in the statute which authorizes the diversion of any portion of such funds for the payment of damages due to negligence of its agents or employes.

The Turnpike Commission, having but one function to perform, does not come within the rule making a distinction between governmental functions and business or corporate functions of a municipality. See Clamper v. Philadelphia, 279 Pa. 385, Steele v. McKeesport, 298 Pa. 116, Scibilia v. Philadelphia, 279 Pa. 549. The only authority given to the Turnpike Commission under the statute is the construction, maintenance, and operation of the turnpike, which is a governmental function: Balashaitis et ux. v. Lackawanna County, 296 Pa. 83. It follows that there can be no liability unless it be expressly imposed: Collins v. Commonwealth, 262 Pa. 572, 580. There is nothing in the Turnpike Act imposing such liability, and the provision of the statute that the commission may sue and be sued is not sufficient for that purpose. The same provision is contained in the School Code but, as we have shown above, a school district is not subject to the principle of respondeat superior.

We conclude that defendant's affidavit of defense raising questions of law must be sustained. The sole question here determined is that the Turnpike Commission, being an instrumentality of the Commonwealth, and being engaged in the performance of

a governmental function, is not liable for the torts of its agents or employes under the doctrine of respondeat superior.

And now, May 25, 1942, defendant's affidavit of defense raising questions of law is sustained in the case of John House v. Pennsylvania Turnpike Commission, no. 213, January term, 1941, and in the case of Willard F. Fry v. Pennsylvania Turnpike Commission, no. 214, January term, 1941, and judgment is directed to be entered in each case in favor of defendant.