Transamerican Freight Lines, Appellant, *v.* Commonwealth.

Argued April 21, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and BOK, JJ.

*James M. Marsh,* with him *J. Harry LaBrum,* and *LaBrum and Doak,* for appellant.

*Edward Friedman,* Deputy Attorney General, with him *Anne X. Alpern,* Attorney General, for appellee.

OPINION PER CURIAM, May 28, 1959:

The order of the court below dismissing the plaintiff's appeal from the refusal of the Board of Finance and Revenue to review the tax settlement made by the Commonwealth's fiscal officers of the plaintiff's gross receipts tax for the year 1951, levied under the Act of June 22, 1931, P. L. 694, as amended, 72 PS §2183

et seq., is affirmed on the following opinion of Judge NEELY, to whom the case was tried without a jury.

"The Act of 1931 imposes an excise tax for the use of the highways of this Commonwealth upon companies engaged in the business of carrying passengers or property for hire over the highways of this Commonwealth, at the rate of eight mills upon the dollar upon the gross receipts of such companies. Under the statute, where a company operates over routes in interstate transportation the tax is determined by an apportionment formula. In this formula the numerator of the fraction is the number of miles operated in Pennsylvania; the denominator is the total miles operated; and the multiplicand is the gross receipts of the carrier from all of its operations.

"The parties have stipulated the facts. We adopt their stipulation as our findings of fact and incorporate the same herein by reference. In the course of our opinion we will discuss those facts which in our judgment are essential to the disposition of this case.

"The appellant is a Delaware corporation with its principal office in Detroit, Michigan. It operates over routes transversing several states, including Pennsylvania, and part of its routes in Pennsylvania are over the Pennsylvania Turnpike. The appellant is engaged in Pennsylvania exclusively in interstate commerce in the business of transporting property by motor vehicle for hire as a common carrier pursuant to a certificate of public convenience and necessity issued by the Interstate Commerce Commission.

"During the year 1951 the appellant owned two freight terminals within the Commonwealth, some personal property including motor vehicles and was engaged exclusively as aforesaid in interstate commerce. It employed no capital or property in this state otherwise than in such commerce. The appellant did not move any intrastate shipments.

"The appellant filed its gross receipts tax return for 1951 and paid the Department of Revenue the sum of $13,547.68, representing the tax on gross receipts produced by the mileage traveled over all state highways in Pennsylvania other than the Pennsylvania Turnpike. During the year 1951, appellant paid to the Pennsylvania Turnpike Commission tolls amounting to $109,324.88, representing the full charge made by the Commission for 2,883,054 miles of use of the Pennsylvania Turnpike during that year.

"The fiscal officers made a settlement of the gross receipts tax for the year 1951 in the amount of $27,381.83, the additional sum of $13,834.15 representing the tax the Commonwealth claims to be due by virtue of the appellant's mileage traveled over the Pennsylvania Turnpike. The settlement was issued by the Department of Revenue under date of September 8, 1955.

"The appellant maintains that the additional gross receipts tax claimed under the settlement cannot constitutionally be exacted because the settlement violates the Commerce Clause of the Constitution of the United States. The appellant contends that because it pays toll over the Turnpike that it cannot constitutionally be charged for the additional sum of $13,834.15, being the balance due the Commonwealth as determined by the fiscal officers. In brief, the appellant's contention is that the Act of June 22, 1931, P. L. 694, is unconstitutional as sought to be applied by the fiscal officers to the appellant's Turnpike mileage.

"It seems to us that this precise question has been disposed of in *Interstate Motor Freight System, Inc. v. Messner et al.*, 63 Dauphin 405 (1953); *Shirks Motor Express Corporation v. Messner*, 375 Pa. 450 (1953), appeal dismissed for want of a substantial Federal question at 347 U. S. 941, re-hearing denied 347 U. S. 970. Shirks and Interstate were both appellants in that case as appealed from this Court.

"In the Shirks case the constitutionality of the Act of 1931 in its application to interstate motor carriers was upheld. Our Supreme Court, speaking through Mr. Justice CHIDSEY, said at page 455: 'It is well settled that a State does not have the power to tax interstate commerce as such: .... It is equally well settled that a State may, consistently with the Commerce Clause, impose upon vehicles engaged in interstate commerce a reasonable, nondiscriminatory excise tax as compensation for the use of its highways: ....'

"This conclusion is supported by numerous authorities: *Capitol Greyhound Lines et al. v. Brice, Commissioner of Motor Vehicles*, 339 U. S. 542 (1950); *Aero Mayflower Transit Co. v. Board of Railroad Commissioners of Montana et al.*, 332 U. S. 495 (1947); *Dixie Ohio Express Co. v. State Revenue Commission et al.*, 306 U. S. 72 (1939); *Morf v. Bingaman, Commissioner of Revenue for New Mexico*, 298 U.S. 407 (1936); *Interstate Busses Corporation v. Blodgett et al.*, 276 U. S. 245 (1928); *Clark et al. v. Poor et al.*, 274 U. S. 554 (1927); *Hendrick v. State of Maryland*, 235 U. S. 610 (1915).

"Interstate Motor Freight System, Inc., a Michigan corporation, appealed from our decision, 63 Dauphin 405, *supra*, alleging that the tax was unconstitutional because levied on its 'transportation over the Pennsylvania Turnpike, a State instrumentality, for which tolls are charged.' After pointing out that there was no violation of the Commerce Clause by the Act of 1931, Mr. Justice CHIDSEY proceeded to state, pages 460, 461: 'Appellants further contend that the tax in question violates the Equal Protection Clause of the United States Constitution, and the Uniformity Clause of the Pennsylvania Constitution. This contention is based in part upon appellants' erroneous construction of the statute which has been previously referred to

and which requires no additional comment, and also upon the fact that the tax is applied to gross receipts arising from use of the Pennsylvania Turnpike for which a compensatory toll is also charged. Appellants argue that a carrier who uses the Turnpike for a given number of miles of its operation must pay a toll in addition to the tax, whereas another carrier who operates for an equal number of miles but does not use the Turnpike pays only the tax, and therefore there is lack of uniformity in the operation of the tax. The Turnpike Commission holds the legal title to the Turnpike, but only in its capacity as an instrumentality of the Commonwealth: Act of May 21, 1937, P. L. 774, Section 4, 36 PS §652d. The Turnpike is one of the public highways which cross the State of Pennsylvania in the same general locality. Two others are the William Penn Highway and the Lincoln Highway. No motor carrier is restricted to the use of the Turnpike to the exclusion of either of such other two routes. *If a motor carrier voluntarily chooses to use the Turnpike because of more economic and efficient operation, such voluntary choice cannot provide the foundation for a constitutional argument.* The choice is obviously made because the amount of the toll is less than savings in operations resulting from a shorter route, few and very slight grades which make it possible to carry loads up to the legal limit, absence of intersections and savings in fuel and time. Appellant Interstate has not shown that the tax plus the toll exceeds fair compensation for its use of the Turnpike. *A taxpayer can not voluntarily assume a burden and then be heard to say that it is unconstitutional.* There is no merit in this contention.' (Emphasis supplied.)

"The apt language of Mr. Justice CHIDSEY disposes of the appellant's contention in this case. In making use of the Turnpike appellant's 'voluntary choice can-

not provide the foundation for a constitutional argument' for the reason, *inter alia,* that 'A taxpayer can not voluntarily assume a burden and then be heard to say that it is unconstitutional.'

"It would serve no useful purpose to quote at length from our opinion in the Interstate case at 63 Dauphin 405, *supra,* wherein we disposed of many of the very contentions advanced by the appellant in this case. We refer particularly to pages 409-410-411 of that opinion.

"The Supreme Court held in the *Shirks* case that the Act of 1931, as amended, did not violate the Commerce Clause of the Federal Constitution. This ruling applied not merely to Shirks Motor Express Corporation but also to Interstate Motor Freight System, Inc., in their operation over the Pennsylvania Turnpike. We think the decision in the *Shirks* case disposes of the appellant's contention herein that the use of Turnpike mileage in the taxing formula placed an undue burden on interstate commerce. Accordingly, we hold that the tax settlement, based upon the Turnpike mileage, did not violate the Commerce Clause of the Constitution of the United States.

"The appellant contends that the Turnpike mileage should not be used in the taxing formula because the Turnpike is not a State highway. This contention is without merit.

"An examination of the applicable statute and its supplements indicates that it was intended by the Legislature that the Turnpike should become part of our State highway system. This purpose is clearly revealed in the title of the original Act of May 21, 1937, P. L. 774,[1] 36 P.S. 652a, which reads as follows: 'Title

---

[1] The Act of May 21, 1937, P. L. 774, *supra*, has been supplemented as follows: 'The Act of May 16, 1940 (Extra Session) P. L. (1941) 949, 36 P.S. 653 et seq.; the Act of June 11, 1941, P. L. 101. 36 P.S. 654 et seq.; the Act of May 23, 1951, P. L. 335, 36 P.S. Pkt.

of Act: An Act to facilitate vehicular traffic between the eastern and western sections of the Commonwealth by providing for the construction, operation and maintenance of a turnpike from a point at or near Middlesex in Cumberland County to a point at or near Irwin in Westmoreland County; providing for the creation of the Pennsylvania Turnpike Commission, and conferring powers and imposing duties on said commission; authorizing the issuance of turnpike revenue bonds of the Commonwealth, payable solely from tolls, to pay the costs of such turnpike; providing that no debt of the Commonwealth shall be incurred in the exercise of any of the powers granted by this Act; providing for the collection of tolls for the payment of such bonds and for the cost of maintenance, operation and repair of the turnpike; making such bonds exempt from taxation; constituting such bonds legal investments in certain instances; prescribing conditions upon which such turnpike shall become free; providing for condemnation; granting certain powers and authority to municipal subdivisions and agencies of the Commonwealth to cooperate with the commission; and authorizing the issuance of turnpike revenue refunding bonds.'

"We believe that the statutes, *inter alia,* provide that the Pennsylvania Turnpike Commission is an instrumentality of the Commonwealth which fulfills an essential governmental function and possesses the power to issue bonds of the Commonwealth; that the Turnpike is to be maintained and repaired through the De-

Parts 658.1 et seq.; the Act of September 27, 1951, P. L. 1430, 36 P.S. Pkt. Parts 660.1 et seq.; the Act of June 10, 1955, P. L. 157, 36 P.S. Pkt. Parts 666.1 et seq.; the Act of January 14, 1951, P. L. (1952) 1947, 36 P.S. Pkt. Parts 667.1 et seq.; the Act of July 28, 1953, P. L. 706, 36 P.S. Pkt. Parts 668.1 et seq.; and the Act of June 14, 1955, P. L. 174, 36 P.S. Pkt. Parts 669.1 et seq.' "

partment of Highways; and further when all bonds have been paid the Turnpike is to become part of the system of State highways and be maintained by the Department of Highways free of all tolls. The Legislature has seen fit to prescribe a speed limit for the Turnpike: Act of April 15, 1941, P. L. 17, 75 P.S. §501(7).

"In a number of appellate court decisions, the status of the Pennsylvania Turnpike Commission is defined. In *Pennsylvania Turnpike Commission Land Condemnation Case*, 347 Pa. 643 (1943), it was held that in acquiring property for the Turnpike Commission, the Commonwealth was acquiring the same through its agent, the Commission.

"In *Pennsylvania Turnpike Commission Appeal*, 351 Pa. 139 (1945), it was held that the authority of the State Mining Commission to determine the amount of coal to be left in place under a State highway and the compensation therefor included the authority to determine the amount of coal to be left in place under a portion of the Pennsylvania Turnpike.

"In *Pickett Unemployment Compensation Case*, 177 Pa. Superior Ct. 240 (1955), an employee of the Turnpike Commission is considered to be an employee of the State.

"The Pennsylvania Turnpike Commission is an instrumentality of the Commonwealth and the Turnpike a public highway: *Shirks Motor Express Corporation v. Messner et al.*, 375 Pa. 450, *supra*, at pages 454-460, 461. See also *Watson v. Pennsylvania Turnpike Commission*, 386 Pa. 117 (1956); *Pennsylvania Turnpike Commission v. Smith*, 350 Pa. 355 (1944).

"It is our opinion that within the meaning of the Act of 1931, as amended, the Pennsylvania Turnpike is a State highway."

Order affirmed.

Mr. Justice McBride took no part in the consideration or decision of this case.