## Rader, Appellant, v. Pennsylvania Turnpike Commission.

Argued November 21, 1961; reargued April 24, 1962. Before BELL, C. J., MUSMANNO, JONES, EAGEN and O'BRIEN, JJ.

*Harry J. Rubin,* with him *Cohen, Senft and Rubin,* for plaintiffs, appellants.

*Bruce E. Cooper,* and *Cooper and Woodside,* for plaintiff, appellant.

*Heath L. Allen,* with him *James K. Thomas, Francis J. O'Gorman, Jr., Henry E. Harner,* and *Hull, Leiby and Metzger,* for defendant, appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 8, 1962:

The sole question presented by these appeals is whether the Pennsylvania Turnpike Commission is immune from liability in trespass for damage resulting from the negligence of its agents and employees. Although the Courts of Common Pleas have decided this question on numerous occasions, it is one of first impression in this Court and the answer is not easy.

Plaintiffs-appellants instituted the present action in trespass against the Pennsylvania Turnpike Commis-

sion. In their amended complaint they alleged that defendant-Commission allowed ice to accumulate on the Turnpike, failed to spread ashes or other abrasive material or to have equipment available to spread abrasive material thereon, and failed to post signs warning of a slippery condition or to have equipment available for the posting of such signs. Plaintiffs contend that, as a result of these acts, the Commission is liable for personal injuries and property damage which ensued when the vehicle operated by plaintiff Charles A. Rader skidded and collided with a guard rail.

Defendant-Commission filed preliminary objections in the nature of a demurrer to the amended complaint setting forth that the Pennsylvania Turnpike Commission was an instrumentality of the Commonwealth *engaged in a governmental function* and therefore is not liable for such injuries and damages in a trespass action.* The Court below, after hearing oral argument, sustained the Commission's preliminary objections and entered judgment in its favor against all plaintiffs.

Plaintiffs concede, as they must, that the Commonwealth itself, in the absence of a statute which authorizes suits against it for torts, is immune from liability in trespass for the negligence of its agents and employees in the construction, operation, maintenance and repair of a highway: *Collins v. Commonwealth,* 262 Pa. 572, 106 A. 229. However, they contend that all ten turnpike acts authorizing construction of segments of the highway by the Commission expressly provide that the Commission "may sue and be sued".** This lan-

---

\* The Commission also filed a petition for severance of the personal action of Charles A. Rader to permit his joinder as an additional defendant in the actions of the other plaintiffs. The Court below granted the severance and Charles A. Rader was joined as an additional defendant by complaint.

\*\* Act of May 21, 1937, P. L. 774, §4, 36 PS §652d (the portion of the highway on which the accident occurred was authorized by

guage, if it stood alone, is per se broad enough to cover all actions including the present one. However, this same contention was urged upon and rejected by the Court of Common Pleas of Dauphin County in *House v. Pennsylvania Turnpike Commission*, 45 Pa. D. & C. 677, 53 Dauphin 38 (1942), where the question of the Commission's immunity from tort liability was first raised. In that case, plaintiffs brought actions of trespass against the Pennsylvania Turnpike Commission, claiming damages for injuries sustained as a result of the negligence of an employee or agent of the Commission. The Court sustained the affidavits of defense in the nature of a statutory demurrer which asserted that the Commission was an instrumentality of the Commonwealth and as such was not liable for the torts of its employees or agents. President Judge SHEELY, specially presiding, aptly said (pages 680-681, 682) : "In Greene County v. Center Township, 305 Pa. 79, 86, Mr. Justice KEPHART said: 'We stated in Westmoreland Chem. Co. v. Public Service Commission, 294 Pa. 451, 456, that the highways of the Commonwealth, apart from those owned privately, such as turnpikes, are the property of the State. It may set up within constitutional limitations any agency it sees fit to improve, maintain, repair, administer and control them. It may impose the cost incident thereto entirely on one agency to the exclusion of another, or it may permit them to agree on a division of costs. . . . "And, in the building of roads, it [a county] is acting in its governmental,

this Act) ; Act of May 16, 1940, P. L. (1941) 949, §6, 36 PS §653e; Act of June 11, 1941, P. L. 101, §6, 36 PS §654e; Act of May 23, 1951, P. L. 335, §6, 36 PS §658.6; Act of September 27, 1951, P. L. 1430, §6, 36 PS §660.6; Act of January 14, 1952, P. L. (1951) 1947, §6, 36 PS §667.6; Act of July 28, 1953, P. L. 706, §6, 36 PS §668.6; Act of June 10, 1955, P. L. 157, §6, 36 PS §666.6; Act of June 14, 1955, P. L. 174, §6, 36 PS §669.6; and Act of May 15, 1956, P. L. (1955) 1589, §6, 36 PS §652.6.

rather than business, capacity." Townships are in the same situation as counties with respect to roads.' See also Szilagyi et al. v. Bethlehem, 312 Pa. 260.

"The fact that a toll is exacted from users of the turnpike does not change the character of its operation from that of a governmental function. In Geiger v. The Perkiomen & Reading Turnpike Road, 167 Pa. 582, 585, the Supreme Court said: 'The taking of tolls, it has been held, is only another method of taxing the public for the cost of construction, repair and reimbursement to the corporation for the capital invested. . . .'

"In Brush v. Commissioner of Internal Revenue, 300 U. S. 352, 372, the Supreme Court of the United States said: 'If that service be governmental it does not become private because a charge is made for it, or a profit realized. A state, for example, constructs and operates a highway. It may, if it choose, exact compensation for its use from those who travel over it . . . but this does not destroy the claim that the maintenance of the highway is a public and governmental function.'
. . .

"The Turnpike Commission, having but one function to perform, does not come within the rule making a distinction between governmental functions and business or corporate functions of a municipality. See Clamper v. Philadelphia, 279 Pa. 385, Steele v. McKeesport, 298 Pa. 116, Scibilia v. Philadelphia, 279 Pa. 549. The only [pertinent] authority given to the Turnpike Commission under the statute is the construction, maintenance, and operation of the turnpike, which is a governmental function: Balashaitis et ux. v. Lackawanna County, 296 Pa. 83. It follows that there can be no liability unless it be expressly imposed: Collins v. Commonwealth, 262 Pa. 572, 580. There is nothing in the Turnpike Act imposing such liability, and the provision of the statute that the commission may sue and be sued is not suffi-

cient for that purpose. The same provision is contained in the School Code but, as we have shown above, a school district is not subject to the principle of respondeat superior."

Since that time the same contention has been repeatedly presented to the lower Courts of this Commonwealth and each time it has been rejected: *Super v. Pennsylvania Turnpike Commission*, 19 Pa. D. & C. 2d 372, 73 Dauphin 387 (1959) ; *Harrell v. Porter*, 19 Pa. D. & C. 2d 385 (1958) ; *DiRenzo v. Transamerican Freight Lines, Inc.*, 10 Pa. D. & C. 2d 723 (1957) ; *Caputo v. Pennsylvania Turnpike Commission*, 103 P.L.J. 486 (1955) ; *Malpica v. Pennsylvania Turnpike Commission*, 65 Dauphin 302 (1953). Moreover, since the *House* case (supra) was decided in 1942, the legislature has passed seven acts relating to new or additional extensions of the turnpike and each contained the identical "sue and be sued" clause. Significantly, however, the legislature has not seen fit to vary or amplify this clause in any of the above enumerated acts or to impose upon the Turnpike Commission liability for torts. If the statutory construction and the result reached in *House* and unanimously followed in the later cases had not been in accordance with the intent of the legislature, it could easily have changed the language of the new Acts to impose trespass liability. Cf. *Loeb Estate*, 400 Pa. 368, 375-376, 162 A. 2d 207; *Cali v. Philadelphia*, 406 Pa. 290, 310-311, 177 A. 2d 824. In the light of these facts and the well reasoned decisions above cited, we do not feel that this legislatively approved result should be judicially changed or modified.

Moreover, when the highest Courts of our sister states have been called upon to interpret similar "sue and be sued" clauses, they have almost unanimously held that such clauses authorize only such actions as are necessary to carry out the business and functions of the Commission or Agency and do not waive immu-

nity from suit in negligence actions: *Nelson v. Maine Turnpike Authority,* 157 Me. 174, 170 A. 2d 687; *Spangler v. Florida State Turnpike Authority,* 106 So. 2d 421 (Florida); *Tounsel v. State Highway Department,* 180 Ga. 112, 178 S.E. 285; *Fatzer v. Kansas Turnpike Authority,* 176 Kan. 683, 273 P. 2d 198; *Westwego Canal & T. Co. v. Louisiana Highway Commission,* 200 La. 990, 9 So. 2d 389. Contra: *McCabe v. New Jersey Turnpike Authority,* 35 N. J. 26, 170 A. 2d 810; *Petty v. Tennessee-Missouri Bridge Commission,* 359 U. S. 275 (that Court, however, recognized that neither Missouri nor Tennessee would have allowed the suit). See: Annotation, 62 A.L.R. 2d 1231.

We agree with the Court of Common Pleas of Dauphin County and with the highest Courts of our sister States that the authority to "sue and be sued" was not intended as a general waiver of immunity from trespass suits, but *applies only to those actions necessary to carry out the ordinary business and functions of the Commission or Agency.*

Plaintiffs' second and final contention is that the Pennsylvania Turnpike Commission is a quasi-corporate agent of the Commonwealth which occupies the same status as counties, cities, townships, boroughs and municipal authorities with respect to liability for the negligent maintenance of roads and highways. It is well settled that while the Commonwealth is not liable for the negligent maintenance of its highways, its political subdivisions do not enjoy the same immunity: *Smith v. Snowden Township,* 348 Pa. 187, 34 A. 2d 515; *Clark v. Allegheny County,* 260 Pa. 199, 103 A. 552; *Kriebel v. Worcester Township,* 253 Pa. 452, 98 A. 686; *Burrell Township v. Uncapher,* 117 Pa. 353, 11 A. 619; *Dean v. New Milford Township,* 5 W. & S. 545; *Hartness v. Allegheny County,* 349 Pa. 248, 250-251, 37 A. 2d 18; *Balashaitis v. Lackawanna County,* 296 Pa. 83, 85-86, 145 A. 691; *Scibilia v. Philadelphia,* 279 Pa.

549, 555-556, 124 A. 273; *Collins v. Commonwealth,* 262 Pa. 572, 580, 106 A. 229; *Ford v. Kendall Borough School District,* 121 Pa. 543, 549, 15 A. 812.

Plaintiffs rely upon a number of federal decisions which support their contention. Chief among these is *Gerr v. Emrick,* 283 F. 2d 293, decided by the Court of Appeals for the Third Circuit in 1960. In that case the Court, which was bound by *Erie R. Co. v. Tompkins,* 304 U. S. 64, to apply Pennsylvania law, ignored our lower Court decisions and held that the Pennsylvania Turnpike Commission did not enjoy the sovereign immunity of the Commonwealth.\* In arriving at this result the Third Circuit placed great reliance upon *Lichtenstein v. Pennsylvania Turnpike Commission,* 398 Pa. 415, 158 A. 2d 461,\*\* which, as will presently appear, is completely inapplicable to the case at bar. The District Courts have likewise generally denied immunity to the Commission: *Linger v. Pennsylvania Turnpike Commission,* 158 F. Supp. 900 (W.D. Pa. 1958); *Eastern Motor Express, Inc. v. Espenshade,* 138 F. Supp. 426 (E.D. Pa. 1956); *Lowes v. Pennsylvania Turnpike Commission,* 125 F. Supp. 681 (M. D. Pa. 1954); contra: *Masse v. Pennsylvania Turnpike Commission,* 163 F. Supp. 510 (E. D. Pa. 1958).

---

\* In its opinion the Court said (page 295): "On the score of the lower Pennsylvania court decisions we need only say that we do not deem them to represent such a 'consensus' of nisi prius opinion as to require us to defer to their holdings, particularly in view of recent rulings and expressions therein of the Supreme Court of Pennsylvania.

"We find an illuminating guide towards the decision of the issue here presented in Lichtenstein v. Pennsylvania Turnpike Commission, 1960, 398 Pa. 415, 158 A. 2d 461 and are moved by it to conclude that the Pennsylvania Supreme Court would hold that the Commission is not immune from actions premised on its negligent construction, operation or maintenance of the Pennsylvania Turnpike."

\*\* Plaintiffs also cite this case in support of their argument.

We, of course, are not bound by these decisions of the federal Courts, but in view of the vigor with which they are urged upon us by plaintiffs and as an expression of a view contrary to current Pennsylvania law, we desire to mention them and refute their reasoning. Plaintiffs as well as the Third Circuit Court have misconceived the breadth and effect of our decision in *Lichtenstein v. Pennsylvania Turnpike Commission,* 398 Pa., supra, upon which they rely. In that case this Court overruled *Pennsylvania Turnpike Commission v. Smith,* 350 Pa. 355, 39 A. 2d 139, and held that the Commission is liable for interest on the award of a Board of View where it condemns and enters upon land. Similarly, in *Wolf v. Commonwealth,* 403 Pa. 499, 170 A. 2d 557 (which was decided only a few months later), the Court overruled *Culver v. Commonwealth,* 348 Pa. 472, 35 A. 2d 64, and held that the Commonwealth was liable not only for detention damages, but also for interest in condemnation cases. In this sense, *Lichtenstein* was merely a precursor of *Wolf,* but neither imposed a liability for torts.

There is a material and important difference and distinction between the Pennsylvania Turnpike Commission and Counties, Cities, and similar political subdivisions. This is apparent from Section 4 of the Act of May 21, 1937, which makes clear that the Turnpike Commission is in many respects the alter ego of the Commonwealth. That section provides pertinently:

"That there is hereby created a commission to be known as the 'Pennsylvania Turnpike Commission' and by that name the commission may sue and be sued, plead and be impleaded, contract and be contracted with, and have an official seal. The commission is hereby constituted an *instrumentality of the Commonwealth,** and *the exercise by the commission of the*

---

\* Italics throughout, ours.

*powers conferred by this act* in the construction, operation and maintenance of the turnpike *shall be deemed and held to be an essential governmental function of the Commonwealth.* The commission shall consist of five members, and the Secretary of Highways shall be a member ex officio. . . . Provided, however, That *all contracts and agreements relating to the construction of the turnpike and connecting tunnels and bridges shall be approved by the Department of Highways,* and *the turnpike and connecting tunnels and bridges shall be constructed under the supervision of the Department of Highways.* . . . All such compensation and salaries and all expenses incurred in carrying out the provisions of this act shall be paid solely from funds provided under the authority of this act, and no liability or obligation shall be incurred hereunder beyond the extent to which money shall have been provided under the authority of this act."

It is clear from the above quoted provisions of the Act that the Commonwealth has not divorced itself from all control and supervision over the Turnpike as it did with respect to highways constructed and maintained by its political subdivisions by the Act of June 13, 1836, P. L. 551.* The Act, we repeat, specifically states: "Provided, however, That all contracts and agreements relating to the construction of the turnpike and connecting tunnels and bridges *shall be approved by the Department of Highways,* and the turnpike and connecting tunnels and bridges shall be constructed *under the supervision of the Department of Highways.*"

Furthermore, *Transamerican Freight Lines v. Commonwealth,* 396 Pa. 64, 151 A. 2d 630, cert. denied 361 U. S. 882, held that the Pennsylvania Turnpike *was a*

---

* See also The County Code of August 9, 1955, P. L. 323, §2702; Second Class County Code of July 28, 1953, P. L. 723, §2901, 16 PS §5901; The Third Class City Code of June 23, 1931, P. L. 932, §2915, as amended, 53 PS §37915.

*State highway.* This case arose under the Act of June 22, 1931, P. L. 694, as amended, 72 PS §2183 et seq., which imposed an excise tax on the gross receipts of companies engaged in the business of carrying passengers or property over Pennsylvania highways. For companies operating over routes in interstate commerce, the tax was determined by dividing the number of miles operated in Pennsylvania by the total number of miles operated on all highways. The taxpayer contended, inter alia, that mileage operated over the Pennsylvania Turnpike should be *excluded* from the numerator of the fraction *on the ground that the turnpike was not a State highway.* In analyzing the pertinent Turnpike Acts, the Court said (pages 71-72) : " 'We believe that the statutes, *inter alia,* provide that the Pennsylvania Turnpike Commission is an instrumentality of the Commonwealth; that the Turnpike is to be maintained and repaired through* the Department of Highways; and further when all bonds have been paid the Turnpike is to become part of the system of State highways and be maintained by the Department of Highways free of all tolls. The Legislature has seen fit to prescribe a speed limit for the Turnpike: Act of April 15, 1941, P. L. 17, 75 P.S. §501(7).

" 'In a number of appellate court decisions, the status of the Pennsylvania Turnpike Commission is defined. In Pennsylvania Turnpike Commission Land Condemnation Case, 347 Pa. 643 (1943), it was held that in acquiring property for the Turnpike Commission, the Commonwealth was acquiring the same through its agent, the Commission.

" 'In Pennsylvania Turnpike Commission Appeal, 351 Pa. 139 (1945), it was held that the authority of the State Mining Commission to determine the amount

---

* It would have been more accurate to say "under the supervision of the Department of Highways."

of coal to be left in place *under a State highway* and the compensation therefor included the authority to determine the amount of coal to be left in place *under a portion of the Pennsylvania Turnpike.*

" 'In Pickett Unemployment Compensation Case, 177 Pa. Superior Ct. 240 (1955), an employee of the Turnpike Commission is considered to be *an employee of the State.*

" 'The Pennsylvania Turnpike Commission is an instrumentality of the Commonwealth and the Turnpike a public highway: Shirks Motor Express Corporation v. Messner et al., 375 Pa. 450, supra, at pages 454-460, 461. See also Watson v. Pennsylvania Turnpike Commission, 386 Pa. 117 (1956); Pennsylvania Turnpike Commission v. Smith, 350 Pa. 355 (1944).

" 'It is our opinion that within the meaning of the Act of 1931, as amended, the Pennsylvania Turnpike *is a State highway.'* "

Moreover, in *Ewalt v. Pennsylvania Turnpike Commission,* 382 Pa. 529, 115 A. 2d 729, where plaintiff filed a bill in equity seeking consequential damages for injury to his property in the nature of a continuing trespass, the Court said (pages 534-535):

"On the basis of the foregoing, the appellee contends that the Commonwealth's immunity from liability for damages due to injuries such as are pleaded by the plaintiffs' also attends the Commission since Section 4 of the Turnpike Act of May 21, 1937, P. L. 774, 36 PS §652(d), constitutes the Commission an instrumentality of the Commonwealth and Section 5 of the Western Pennsylvania Turnpike Extension Act of 1941, supra, declares that the Commission's exercise of the powers conferred by that Act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth. The immunity which the appellee thus imputes to itself may be conceded."

These authorities aid us in reaching the conclusion that the Pennsylvania Turnpike Commission possesses the same immunity from liability in trespass actions arising out of the negligence of its agents and employees in the maintenance of the highway as does the Commonwealth.

Judgment affirmed.

Mr. Justice COHEN took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I regret that the prophetic potentialities of United States Circuit Court of Appeals Judge KALODNER of the Third Circuit do not keep pace with his scholarly attainments, his juristic excellence and his sound philosophic appreciation of what constitutes justice. In the case of *Gerr v. Emrick*, 283 F. 2d 293, he said: ". . . we are of the opinion that the Pennsylvania Supreme Court would hold that the Pennsylvania Turnpike Commission may be sued for negligence in the construction, operation and maintenance of the Turnpike."

The Pennsylvania Supreme Court has decided exactly the reverse. It has reached the conclusion that the Pennsylvania Turnpike Commission may not be "sued for negligence in the construction, operation and maintenance of the Turnpike." However, I believe that Judge KALODNER's reasoning more correctly responds to legal realities, decisional integrity, and jurisprudential truth, not to mention natural justice, than does the Majority Opinion of this Court in the case before us.

The legislation which created the Turnpike Commission and the further Acts which have extended its scope (all cited in the Majority Opinion) have specifically stated that the Commission "may sue and be sued." It would be difficult to find language which more clearly expresses an intention and is less in need of "interpretation" than those words: *The Commission*

*may sue and be sued.* This statutory authority carries no limitation. It does not say that the Commission may be sued only with regard to construction or in actions arising out of contractual responsibilities. The phrase is there for the world to see and understand. It would take a great deal of interpreting of language to construe those words to mean that the Commission may be sued, "but—." That interpreting, unfortunately, has not been lacking. The herculean effort to have "be sued" mean "be sued on every subject except tort" has been manifested by many lower courts of the Commonwealth and their distortion of language has now received the official approval of the highest Court of the Commonwealth and nothing can be done about it—at present.

Nevertheless, in the interests of even-handed justice, which is always looming on the horizon of hope in the courts, I believe it is necessary to speak out and declare that the decision of this Court does not accord with legal principles which should control in actions of this kind. I do not intend to write a long dissenting opinion because I do not believe it is necessary. When a statute states that a commission may be sued and it adds no limitation to that suability, the only conclusion possible is that the commission may be sued like anybody else may be sued. I would be willing to state my case of dissent entirely on the excellent opinion written by Judge KALODNER in the case already cited.

In *Boorse v. Springfield Township,* 377 Pa. 109, I expatiated at length on the many inconsistencies, absurdities and injustices which result from application of the antiquated doctrine that the government is immune from tort liability. I have touched on the subject in other dissenting opinions, but I cannot avoid saying that the immunity proclaimed in the case at bar outdistances the injustices I have heretofore referred to in this field because the entity which is here

being sued is *not* the government. It is not a government institution. It charges for the use of the turnpike it operates, it collects moneys from the restaurants and gasoline stations which offer services to the motorists using the turnpike.

We have thus before our eyes what is definitely and conclusively a business enterprise. There is no difference between buying a ticket to ride on a railroad train and buying a ticket to ride (albeit in your own automobile) on a high-speed highway specially constructed to attract fee-paying clients. The Commonwealth recognizes that the Turnpike Commission is a business engaged in providing service for a monetary consideration. While, therefore, it wants to help it in every way it can because, after all, its success redounds to the credit and prestige of the Commonwealth, it does not in any way want to be obligated financially for obligations incurred by the Commission. Hence, Section 2, 36 P.S. §652b, of the Turnpike Act provides: "That turnpike revenue bonds issued under the provisions of this act *shall not be deemed to be a debt of the Commonwealth or a pledge of the faith and credit of the Commonwealth* or a pledge of the faith and credit of the Commonwealth, but such bonds shall be payable exclusively from the fund herein provided therefor from tolls. All such bonds shall contain a statement on their face that *the Commonwealth is not obligated to pay the same or the interest thereon except* from tolls and that the faith and credit of the Commonwealth is not pledged to the payment of the principal or interest of such bonds." (Emphasis supplied).

In behalf of the tort immunity theory the Commission points out that the Highway Department of the Commonwealth is authorized to render assistance to the Commission through the approval of its plans of construction, participating in repair work, etc. However, it is made clear in the Act that all moneys ex-

pended by the Department must be paid back by the Commission to the Commonwealth from receipts collected by the Commission from tolls. (Sections 3, 12, 36 P.S. §§652c, 652.)

The Majority Opinion says that "the authority to 'sue and be sued' was not intended as a general waiver of immunity from trespass suits, but *applies only to those actions necessary to carry out the ordinary business and functions of the Commission or Agency.*" (Emphasis in original).

But is not the maintenance of the highway an "ordinary business and function of the Commission"? What could be more ordinary, in the sense of regularity and continuity, than the maintenance of the very instrumentality which is the sole reason for its existence, that is, the highway? And if it does that job of maintenance negligently, why should it not be sued? And if found guilty of the charged negligence, why should it not pay as it must pay for any other expenditure in the "ordinary business and functions of the Commission"?

It is true that the turnpike statute makes the statement that the Commission is "hereby constituted an instrumentality of the Commonwealth", but this provision must be read in connection with other portions of the statute. In *Darby v. L. G. De Felice & Son*, 94 F. Supp. 535, the United States District Court of the Eastern District held that "A determination of the question of whether the Commission is an agency or department of the Commonwealth of Pennsylvania or a separate and distinct legal entity we feel depends in the last analysis upon the attributes or characteristics of the Commission as found in the various provisions of the Act of 1940."

I would accordingly hold that the utterance in the Act that the Commission is an instrumentality of the Commonwealth declares what is impossible, if we are to respect and give vitality to the rest of the Act. The

naked statement that the Commission is an instrumentality of the Commonwealth does not make it so. Declaring a horse to be a cow will never draw milk from the udderless beast.

The Majority Opinion quotes from *Transamerican Freight Lines v. Commonwealth*, 396 Pa. 64, where this Court said: "The Legislature has seen fit to prescribe a speed limit for the Turnpike." But surely this is no criterion for determining that the turnpike is a state function. In the interests of public safety, the Legislature may prescribe a speed limit over any terrain, including private property.

This Court has already indicated that it would not regard the Commission as an integral part of the Commonwealth of Pennsylvania and thus not suable. In *Lichtenstein v. Pennsylvania Turnpike Commission*, 398 Pa. 415, we held: "Nothing could be clearer than that claims against the Turnpike Commission are not chargeable to the Commonwealth."

In *Gitlin v. Pa. Turnpike Commission*, 384 Pa. 326, the Commission contended that since the Commonwealth is not liable in damages for delay in payment for property condemned by it and since the Turnpike Commission is statutorily declared to be an instrumentality of the Commonwealth, it was likewise free from liability in such regard. This Court struck down that contention with the finality of a guillotine by stating: "The Commission is not the Commonwealth."

If the Commission was not the Commonwealth in 1956, what has happened to clothe it with sovereign powers in 1962? Aside from the tangible reasoning which makes the Commission something entirely different from the Commonwealth, it is to be noted that the legislature cannot confer sovereignty. Sovereignty may be acquired only through the affirmative action of a plebiscite because the sovereignty of Pennsylvania is vested in the people, and the people alone. And in this

respect, the Commission cannot point to any expression by the people to the effect that a body which charges for the use of a road it has constructed and maintains may not be sued when, through negligence, it allows that road to deteriorate and as a consequence injury is inflicted on fee-paying users of the road.

While the Supreme Court of Pennsylvania pronounces the ultimate decision as to whether the Commission may be sued in tort, I believe that the reasoning employed by the Federal Courts on this subject is entitled to considerable respect because, being completely divorced from the State, they approach the question involved wholly detachedly. They have almost without exception indicated that the Commission is not entitled to the immunity being urged in the case at bar. In *Hunklin-Conkey Const. v. Pennsylvania Turnpike Commission*, 34 F. Supp. 26, Judge WATSON of the District Court of the Middle District, held that the Commission is "a legal entity distinct from the Commonwealth of Pennsylvania."

In *Lowes v. Pennsylvania Turnpike Commission*, 125 F. Supp. 681, the Commission pleaded immunity on the ground that it was in substance and effect the Commonwealth of Pennsylvania. Judge FOLLMER of the Middle District of Pennsylvania declared that the statement in the statute that the Commission is an instrumentality of the Commonwealth was "not decisive of the question and not the equivalent of saying that it is entitled to the immunity of the Eleventh Amendment." He held, therefore, that "There is nothing in the relationship of the Pennsylvania Turnpike Commission to the State to remove it from that group of public corporations and political subdivisions which are not clothed with the immunity from suit which belongs to the State alone."

In *Eastern Motor Express v. Espenshade*, 138 F. Supp. 426, Judge LORD of the Eastern District of Penn-

sylvania declared that ". . . the Commission is a separate entity, distinct from the Commonwealth of Pennsylvania [and] not clothed with any immunity."

In *Linger v. Pennsylvania Turnpike Commission*, 158 F. Supp. 900, Judge MILLER of the Western District of Pennsylvania stated that even if the State were to be regarded as the real party in interest, the statutory authorization to "sue and be sued" would in itself be "regarded generally as a consent to suit or waiver of a sovereign's immunity from suit," citing 49 Am. Jur., States, Territories and Dependencies §102. He held finally that: "Since the Commission is not the state or a mere nominee or agent of the state it does not enjoy immunity from suit."

The plaintiffs in this case were injured when the automobile in which they were riding skidded as the result of negligence on the part of the Turnpike Commission in maintaining and operating the turnpike. This Court has held that the plaintiffs have no suit because the Turnpike is the Commonwealth. If the accident in question had happened on a county road, and, of course, a county is a subdivision of the Commonwealth, the plaintiffs would have had the right to sue and recover for the injuries they sustained. (*Clark v. Allegheny County*, 260 Pa. 199.)

People who are not educated in the mysteries of the law are always asking questions as to why certain things are permitted and certain things not permitted in the law. I leave it to the Majority of this Court to explain why it is that if the plaintiffs had been injured while riding over a road where they would *not* have to pay toll for riding on it, they could sue those responsible for their injuries, but because they paid out money to ride on the road where they were actually injured they are turned away from the Court.