B. P. Oil Corporation *v.* Pennsylvania Turnpike Commission.

Argued May 4, 1972, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Peter F. Baughman,* with him *J. Scott Maxwell* and *Waters, Fleer, Cooper & Gallager,* for plaintiff.

*Jay R. Braderman,* Assistant General Counsel, with him *George H. Shaffer,* Assistant Counsel, and *John R. Rezzolla, Jr.,* General Counsel, for defendant.

OPINION PER CURIAM, August 2, 1972:

AND NOW, this 2nd day of August, 1972, the Court being equally divided, the preliminary objections of the Pennsylvania Turnpike Commission are hereby dismissed.

---

OPINION BY JUDGE CRUMLISH, JR., IN SUPPORT OF DISMISSAL OF THE PRELIMINARY OBJECTIONS:

This action[1] to quiet title stems from the refusal of the Pennsylvania Turnpike Commission to permit the B. P. Oil Corporation the right of access over a strip of land separating B. P. Oil Corporation property from a state road.

The facts leading up to this controversy are as follows: Hayes Creek Country Club, by deed dated November 16, 1959, and duly recorded, conveyed to the Pennsylvania Turnpike Commission certain real estate bordering legislative route 408 (traffic route 940) in Carbon County, Kidder Township. This real estate now encompasses the Pocono Interchange of the Pennsylvania Turnpike. The Turnpike Commission used the conveyed lands for its off-ramp and merge lane going westwardly along legislative route 408. Subsequent to that acquisition by the Turnpike Commission, the Department of Highways of the Commonwealth widened legislative route 408 in the area of the Turnpike's ramp and merge lanes.

B. P. Corporation subsequently acquired title from Hayes Creek Country Club to the tract of land adjoining the Turnpike Commission's ramp for the purposes of constructing a gasoline service station thereon. In December of 1970, B. P. applied to the Pennsylvania Department of Transportation for a highway driveway

---

[1] This proceeding which is an action against a commission of the Commonwealth arises under the original jurisdiction of this Court. Act of July 31, 1970, P. L. 673, No. 223, Article 4, Section 401(a)(1), 17 P.S. §211.401(a)(1).

permit for access from its tract directly onto legislative route 408 and the Turnpike ramp-merge area. In February of 1971, the Pennsylvania Turnpike Commission advised the Pennsylvania Department of Transportation that B. P.'s land was separated from legislative route 408 by land owned in fee by the Commission and B. P.'s application for access was thereupon denied.

B. P., in an effort to obtain access, instituted this proceeding in this Court to quiet title to the land immediately bordering Route 408, naming the Pennsylvania Turnpike Commission as party defendant. The Turnpike Commission has filed Preliminary Objections to plaintiff's complaint alleging that the Pennsylvania Turnpike Commission is an instrumentality of the Commonwealth immune from this type of litigation, and since there has been no consent to this action, the complaint must be dismissed.

We are of the opinion that the Preliminary Objections must be dismissed. By doing so, we do not consider the merits of this action to quiet title but only provide a forum in which the issues in that action may be resolved.

The Pennsylvania Turnpike Northeast Extension Act, Act of September 27, 1951, P. L. 1430, §§1 , et seq., 36 P.S. §§660.1, et seq., provides the statutory authority for the construction, operation and maintenance of the section of the Turnpike that is involved in the present controversy. Section 6(c) of that Act, 36 P.S. §660.6 (c) provides that: "The Commission may sue and be sued in its own name, plead and be impleaded: . . ." We are not unmindful of Rader v. Pennsylvania Turnpike Commission, 407 Pa. 609, 182 A. 2d 199 (1962), in which the Supreme Court of this Commonwealth determined that the Legislature, in using identical language, did not intend to waive the Turnpike Commission's immunity from tort liability. We believe, however, the opinion of the Court in Rader supports our conclusions

that the "sue and be sued" clauses *do* waive immunity from suits such as this.

The Court in *Rader, supra,* was concerned with negligence actions exclusively and recognized that "sue and be sued" clauses do authorize actions that are necessary to carry out the business and functions of Commissions. In *Rader, supra,* at 615, Mr. Chief Justice BELL stated: ". . . the authority to 'sue and be sued' was not intended as a general waiver of immunity from trespass suits, but *applies only to those actions necessary to carry out the ordinary business and functions of the Commission or Agency.*" (Emphasis in original.) We are of the view that land acquisitions, ownership and control are necessary to the carrying out of the ordinary business and functions of the Commission.

The fact that the Commission, in settling claims to property, may be performing a governmental function[2] does not afford it the cloak of immunity. Our Supreme Court in *Rader* did not make any distinctions between governmental and proprietary functions in determining that the Commission was subject to suit in connection with matters "necessary to carry out the ordinary business and functions of the Commission or Agency."

Defendant Turnpike Commission suggests that an action to quiet title is analogous to an action in ejectment. Defendant contends that since actions in ejectment have not been allowed against the Commonwealth or its instrumentalities, this action to quiet title also should be dismissed. We do not agree. The Pennsylvania Rules of Civil Procedure, which defendant cites for its proposition, provide the basis for distinguishing the two forms of action. Rule 1061(b)(2) Pa. R.C.P.

---

[2] Section 5 of the Pennsylvania Turnpike Northeast Extension Act, 36 P.S. §66.5, provides that the exercise of the powers conferred by the Act shall be held to be essential governmental functions. One of the conferred powers is the power to acquire, use, dispose of real property.

provides that the action to quiet title may be brought in any instance where an action of ejectment is not available to the moving party.

We hold that the statutory authorization to "sue and be sued" interpreted according to *Rader, supra,* mandates that the plaintiff here be provided a forum in which to prosecute this claim.

OPINION BY JUDGE ROGERS IN SUPPORT OF SUSTAINING PRELIMINARY OBJECTIONS:

Mr. Chief Justice BENJAMIN R. JONES has written: "Certain settled principles must be recognized at the outset: (1) the Commonwealth and its agencies, clothed with the immunity of the sovereign, are not subject to suit without the Commonwealth's consent and (2) the legislature has not authorized ejectment actions against the Commonwealth." *Bannard v. New York State Natural Gas Corporation,* 404 Pa. 269, 274, 172 A. 2d 306 (1961).

The "sue and be sued" provision upon which the majority rests its decision has been repeatedly held not to be legislative consent that agencies so empowered may be sued for the alleged negligent conduct of their affairs. I find no meaningful distinction between an allegation of negligent maintenance by this Commission of its roadway and an averment of a wrongful denial by it of another's privilege of passage across its lands. The dictum of *Rader v. Pennsylvania Turnpike Commission,* 407 Pa. 609, 615, 182 A. 2d 199 (1962), that "sue and be sued" is consent to actions "necessary to carry out the ordinary business or functions of the Commission" does not in my view support the majority's dismissal of the holding of that case as authority for sustaining these preliminary objections. I believe that the proper maintenance of its roadway is more clearly an ordinary function of the Commission than the prevention of alleged trespasses upon its lands.

Nor can I find, for the purpose of a judgment in this case, a distinction between ejectment and the action to quiet title. The latter is authorized "where . . . ejectment will not lie" only because ejectment is not available to one in possession desiring to confirm his title.

I would continue to await the Legislature's expression of its will in this field, convinced that limitations upon the doctrine of sovereign immunity, if needed, should be made by the people's representatives, equipped to appraise the consequences, and not by the judiciary in pursuit of an elitist concept of good.

The plaintiff might have petitioned for a jury of view to assess its damages caused by the denial of its asserted right of passage over the Commission's land. It is thus better placed than victims of the Commission's negligences.

Judges WILKINSON and MENCER join in this opinion.